Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3715 | **DATE** | 5/13/2003 |
| **CASE TITLE** | Kendra vs. Principi | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grand defendants' motion (Doc 17-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 13 2003 | |
| | Notified counsel by telephone. | | date docketed | 25 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MAY 13 2003 | |
| | SCT courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA J. KENDRA, )
)
          Plaintiff, )
)
vs. ) 02 C 3715
)
ANTHONY J. PRINCIPI, Secretary of the )
Department of Veterans Affairs, )
)
          Defendant. )

DOCKETED
MAY 13 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendant's motion for summary judgment. For the reasons stated below we grant the motion.

## BACKGROUND

Plaintiff Barbara J. Kendra ("Kendra") worked for the Veteran's Administration ("VA") as a secretary for Dr. Robert Craig ("Craig"). Kendra claims that she has difficultly walking because, sometime prior to 1995, Kendra had the joints in her feet removed. In July 1995, Kendra was diagnosed with a Baker's cyst on the back of one of her knees. According to Kendra, when the cyst is inflamed she cannot squat, sit for a long time, kneel, or walk for extended periods of time. The cyst was treated in 1995,

25

but continues to become inflamed at times. In August 1996, Kendra injured her back at work. She applied for worker's compensation and received forty-five days off work with pay. She claims that she still has bulging and herniated discs in her back. In August 1996, the entire staff in Kendra's office was relocated to the an outpatient clinic four blocks away from the VA hospital. Kendra claims that she was forced to retire in 1998 because she did not receive accommodations for her alleged disabilities and because she suffered another unspecified injury to her leg.

Kendra acknowledged at her deposition that the cyst and back conditions make it difficult for her to sit at a typewriter long enough to effectively transcribe dictation and make it difficult for her to type and file documents. In addition she claimed that she has trouble walking and thus had difficulty answering the phones at work, delivering documents around the office, and making the necessary trips between the clinic and hospital. She contends that the Defendants did not offer her reasonable accommodations for her alleged disability. Kendra requested a transfer to a light duty position. She also asked to be allowed to work at the VA hospital or in the alternative to have reasonable access to the VA van to allow her to travel between the clinic and the hospital.

Kendra filed a complaint *pro se* alleging that she was discriminated against because of her alleged disability and alleging that Defendants failed to provide her with

reasonable accommodations in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 *et seq.* Subsequent to the filing of the motion for summary judgment by Defendants, Defendants provided Kendra with appropriate written notice of the purpose of a summary judgment motion and an explanation of the consequences of failing to respond to the motion. *See* Local Rule 56.2; *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the

pleadings, but, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the nonmoving party and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *B Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). In addition pleadings filed by *pro se* plaintiffs are entitled to a liberal reading and are held to a less stringent standard than the standard that is applied to pleadings drafted by licensed attorneys. *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999).

## DISCUSSION

The ADA states that no covered employer shall "discriminate against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a). The RA states that no "otherwise qualified individual with a disability" shall "be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance . . ." solely because of the individual's disability. 29 U.S.C. § 794(a). Two distinct types of discrimination claims that can be brought under the ADA and RA are: 1) failure to accommodate claims, and 2) disparate treatment claims. *See Foster v. Arthur Anderson, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999) (indicating the two types of claims for ADA cases); *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000) (indicating the above types of ADA claims); *Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999) (indicating that the above mentioned types of claims are two of the three types of claims under the RA and ADA).

In order to establish a claim for a failure to accommodate under the ADA and RA, a plaintiff must show that: 1) she is disabled under the ADA or RA, 2) her employer knew about the disability, and 3) she is "otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation." *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001); *McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000); *But see Foster*, 168 F.3d at 1032 (indicating that for a failure to accommodate claim a plaintiff must also show that she suffered an adverse employment action). *See also Lenker*, 210 F.3d at 799 (holding that it is not appropriate to apply the *McDonnell Douglas* burden shifting method to cases brought under the reasonable accommodation part of the ADA); *Silk*

*v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999) (indicating that elements of ADA and RA claims are extremely similar and are "distinguishable only because [the RA] is limited to programs receiving federal financial assistance."); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496-97 (7th Cir. 1996) (indicating that RA incorporates standards from ADA).

For an ADA or RA disparate treatment claim a plaintiff must show that: 1) she is disabled under the ADA and RA, 2) she is "qualified to perform the essential functions of [her] job either with or without reasonable accommodation," and 3) her employer took an adverse employment action against her because of her disability. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669 (7th Cir. 2000). *But see Rehling v. City of Chicago*, 207 F.3d 1009, 1018 n.7 (7th Cir. 2000) (applying burden shifting *McDonnell Douglas* method and elements to ADA disparate treatment claim).

I. Whether Kendra Can Perform the Essential Functions of Her Position

Defendants argue that, even with reasonable accommodations, Kendra could not have performed the essential functions of her position. For an ADA or RA claim a plaintiff must show that she is a "qualified individual with a disability." 42 U.S.C. § 12112(a). To be a "qualified individual with a disability" a plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can

perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Peters v. City of Mauston*, 311 F.3d 835, 842, 845 (7th Cir. 2002) (holding that RA looks to standards of ADA and holding that for RA case plaintiff must show that she is a "qualified individual with a disability"); *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 484 (7th Cir. 2002) (stating that ADA does not require an employer to "modify, reduce, or relocate the essential functions of a job to accommodate an employee."). *See also Winfrey*, 259 F.3d at 614 (dealing with accommodation claim); *Kersting*, 250 F.3d at 1115 (dealing with disparate treatment claim); *Peters*, 311 F.3d at 845 (holding that plaintiff could not perform essential functions of his job and holding that an accommodation that would require another person to perform the essential functions of plaintiff's job would be unreasonable). A two step test is used to determine if an individual is a "qualified individual with a disability." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). The first issue considered is whether the plaintiff has the education and experience necessary for the position. *Id.* If the plaintiff does have the appropriate background then we must determine whether the plaintiff "can perform the essential functions of the position held or desired, with or without reasonable accommodations." *Id.* (quoting 29 C.F.R. app. § 1630.2(m)).

Defendants contend that Kendra cannot perform the essential functions of her position. Pursuant to Local Rule 56.1 Kendra admitted that because of her back injury she could not sit at a typewriter long enough to effectively transcribe dictation and that she could not effectively type and file correspondence, reports, bulletins, memos, research reports, and manuscripts. She also admits that she had difficulty walking the ten feet to answer the phone at work, walking to deliver reports in the office, and walking the three blocks between the clinic and hospital. Pursuant to Local Rule 56.1 Kendra admits that the above mentioned duties were "primary duties listed in her job description." We think that admission plus the fact that she is described as a secretary are sufficient to conclude that the above mentioned tasks, particularly using a typewriter, transcribing dictation, and filing for long periods of time are essential functions for the secretary position that Kendra held.

Kendra does not claim that they are not essential functions for her position. Rather she argues that she was able to do the above mentioned activities, but only for a short period of time. However, the position held by Kendra required her to perform the duties for long periods of time. The duration of the activities is a part of the position requirements. For example, if the position usually required the secretary to type twenty letters a day and Kendra showed that she was able to sit down and type one letter a day, she clearly could not perform the essential functions for her position. We

note that the accommodations requested by Kendra would not have altered her ability to perform the essential functions of her position. Even if she were allowed to work at the VA hospital or allowed a set schedule for the van, she would not be able to do the typing, filing, and other tasks necessary for her position. She also requested that she be given light duty work as an accommodation, but that would not have allowed her to perform the essential functions of her secretary position. Rather it would have involved her transfer to a light duty position. Pursuant to Local Rule 56.1 Kendra admits that Dr. Nand asked personnel whether a light duty position was available for Kendra and was told that there was not a position available due to downsizing. Therefore, we find that Kendra was not qualified to perform the essential functions of her position with or without a reasonable accommodation.

II. Whether there was a Material Adverse Employment Action

For a disability discrimination claim the plaintiff must show that she suffered an adverse employment action. *Kersting*, 250 F.3d at 1115. Kendra alleges that Craig was reprimanded for writing books and teaching during work time and Kendra alleges that Craig blamed Kendra for being caught by his superiors. According to Kendra, in retaliation, Craig embarrassed her in front of other employees by making a scene about data input mistakes. Craig also allegedly gave Kendra a "full successful" rating rather than an "outstanding rating" and refused to meet with a union representative to discuss

Kendra without an appointment. However, none of the above actions constitute a material adverse employment action against Kendra. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (indicating that negative evaluations are not adverse employment actions); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir. 1998) (indicating that the adverse action at issue must be material); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (indicating that simply because an employment action makes an employee unhappy, does not make the action an adverse employment action); *Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) (stating that an adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").

Kendra also claims that she was forced to retire by Defendants. However, this allegation is tied to her failure to accommodate claim which does not require a material adverse employment action. Kendra admits that as of April 8, 1997, she could no longer work at all because of some unspecified injury to her leg and that she retired because she could not get worker's compensation any longer and was running out of money. Although Kendra also claims that she was forced to retire because Defendants refused to provide her with accommodations, she admits that in 1997, Craig sent her a memo asking Kendra to provide him with a list of duties that she believed that she could perform within her limitations and Kendra admits that she never responded to the

memo either orally or in writing. Therefore, Kendra has not shown that she suffered a material adverse employment action. Kendra also complains about the fact that she did not receive worker's compensation benefits, but we do not have jurisdiction to review the decisions of the Illinois worker's compensation office.

## CONCLUSION

Based on the foregoing analysis we grant Defendants' motion for summary judgment.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAY 13 2003